Bourke v. United States is our next case for argument, and an appellant is appearing by Zoom. Let's see. Thank you, Your Honor. Mr. Flaxman. Good morning, Your Honor. Let me start out by acknowledging the professionalism of Assistant U.S. Attorney Hancock for calling the attention of the Court to the recent decision of the Ninth Circuit in Hawkins v. United States. That came in on Friday. We filed a response on, I think, Saturday. It came in on Wednesday. We filed a response on Saturday. Hawkins accepts and applies the legal theory urged by appellant in this case. Do you think that helps you or hurts you? It helps us. It accepts our theory that the FECA only bars medical malpractice claims that arose in treatment of an FECA-covered injured. No, I don't think you got the gist of my question. Does the Some judges on this Court are guffawing about the Ninth Circuit and saying they're always wrong, but the Ninth Circuit has changed in recent years, and it's being reversed much less frequently by the Supreme Court, and I think in this case they got it exactly right. If you start with the language of the FECA, that's Section 8116C, it talks about the FECA being the exclusive remedy that applies to aggravation, and it applies to aggravation of injuries caused by a physician's malpractice. That's what the Second Circuit held back in 1959, which appears to have been the first case that applied that rule to FECA cases, and the Court there said that that's what Congress intended, that when you are treated by a federal doctor who commits malpractice in the course of a treatment of an FECA injury. I must say, instead of asking what Congress intended, why don't we ask what Congress enacted? Congress enacted Section 8116C, which says that the FECA is the exclusive remedy for workplace injuries. For all injuries under this subchapter. Okay, so the technical question has to be whether injuries under this subchapter is viewed from the perspective of the plaintiff, what the plaintiff's claims were, or from the perspective of the findings of the Department of Labor. That's not the language of the statute, which keys into the... No, no, no, look, the statute refers to injuries under this subchapter, and I'm asking whether that means injuries asserted by the plaintiff to be under this subchapter, or injuries found by the Department of Labor to be under this subchapter. It has to be... Well, the only reading that makes sense is injuries caused by the workplace injury. The result otherwise would be a cruel hoax perpetrated by Congress in enacting the FECA and the FTCA. Well, look, Mr. Flaxman, I don't want to pursue this too far, but people who file claims might be right or might be wrong about what causes what, and the Department of Labor might be right or might be wrong about what causes what. I'm just trying to figure out what, in your view, the statute is referring to. The position of the injured party or the findings of the department. The injury is what the statute refers to. The department found that the injuries claimed by Mr. Bork were not... There's no evidence to show that they were caused by the exposure to noxious fumes in the workplace, which is exactly... The basic rule, the rule that underlies this malpractice in treatment of a workplace injury comes about from... It's kind of reflected in the restatement of torts, which talks about the treatment of it. When malpractice is committed in the course of treating an injury caused by negligence, the person injured could sue the tortfeasor both for the injury and for the malpractice. Mr. Flaxman, I'm sorry to interrupt you. Let me ask a question that I think gets at what Judge Easterbrook is asking you, but I'm going to put it in a very different way. Over and over in your brief, you emphasize that Mr. Bork, in the end, proved mistaken in his contention and belief that the malpractice occurred during the treatment of his injury. In other words, he just mistakenly thought it was a workplace injury. From the inhalation of these fumes from this roofing project that was going on at Heinz. Is your repeated use of the word mistake of any legal significance? No. Okay. That's the same question that Judge Easterbrook is asking you, okay? And can you explain why? Because you say it over and over and over again. He was mistaken. He was mistaken. He was mistaken. Well, he was mistaken, but let me answer that, if I may, with a hypothetical. What if Mr. Bork- And then come back to the question. I will try to answer it. I definitely will come back to the question. What if Mr. Bork had started by filing a tort claim against the VA doctors who allegedly committed medical malpractice? The response would have been, oh, you can't do that. You have to sue under the FECA, or you have to file a claim under the FECA. Then he filed a claim under the FECA and came about and resulted in a finding that the injuries for which the medical malpractice was allegedly involved were not caused by a workplace injury. So the fact is, and he was mistaken, which is why he filed the FECA first, but he learned in the course of litigating that, that he's wrong. That it's- Mr. Fletcher, it's a little hard to file the full procedural history from the record here. Did your client assert an FTCA claim initially with the VA? I'm not sure. There was a suggestion in the briefing that before he filed the FECA claim, that he filed an FTCA claim or asserted one against the VA, and I couldn't figure that out from the record. I do not know, Your Honor. I'd be glad, perhaps the government will, has a better grasp of the record than I do and can answer that question, or we can go back and scour the record. I think the government would say yes, and I think they answer it on page three of their brief. It's not, I think Judge St. Eve is right. It's not crystal clear, but I think the government's going to say, yes, he did. That's certainly a fact that's answerable, but not by way of the- If an FTCA claim was barred by FECA, at least at that juncture. And does that change anything? It doesn't change anything because the injury was not caused by a workplace incident, and it should not be precluded by FECA. That's really our position. The Fuqua case that the government relied upon before in its brief involved the same injury that was emotional distress from losing- Can I ask my question still one more way? What if Bork was right the first time, and the Department of Labor is the person, is the entity that is wrong? That this really is a workplace injury? Well, the court does not have the power to say that because you cannot review findings and determinations made by the Department of Labor. Okay. We must accept- That might be the answer. We have to assume the Department of Labor is right, and therefore, we must take this as not a workplace injury. I mean, that may be the right answer, but I think we have to figure out whether that is so. I would be glad to assist the court with a post-argument memorandum, but I think Your Honor just articulated our position more clearly than I have done. If there are no further questions, I'll yield to the government. Oh, I certainly have questions. The United States asks us to affirm the judgment on the alternative ground that the suit is untimely, and I think we need to discuss that. Well, I would stand on the arguments in the brief that affirmative defenses should not generally be raised on a motion to dismiss. They should not be raised, they should not be resolved on a motion to dismiss when there is fact. Is that true of, that's true of motions under Rule 12b-6? This was a motion under Rule 12b-1. Are you saying that the plaintiff has no burden in a 12b-1 situation to show anything about the period of limitations? I always thought that the statute of limitations was an affirmative defense raised under 12b-6, not under 12b-1. That the jurisdictional question under 12b-1 is whether it's concluded by the FECA, and I certainly might be mistaken in my long-held understanding of that, but I . . . Well, maybe you're right, but it seems to me we need to figure that out. Well, I think that the general rule is that a statute of limitations is an affirmative defense, that when it's fact-intensive, should not be raised, should not be resolved in a 12b-6 motion, that the plaintiff does not have a burden to anticipate the affirmative defense and plead facts that would show the affirmative defense is meritless. The district court did not reach that question, and this court should not reach the question in the first instance when there are disputed, when there are facts, when it's a fact-based defense. I'll ask again if there are further questions, otherwise I'd like to yield to the government. Certainly, counsel. Thank you. Ms. Hancock. Good morning, your honors. May it please the court. We're asking you to reaffirm here that a federal employee cannot bring an FTCA tort claim against the United States based on injuries that are also covered under the FECA, and . . . The problem, of course, is the Department of Labor found they're not covered, right? Mr. Flaxman brought up Section 8116C, which talks about injuries under this subchapter, and then we have to figure out what that is, and we turn to Section 8102A, which says it's on-the-job injuries, and the Department of Labor found that Bork didn't suffer from an on-the-job injury, or at least the injury for which he's seeking compensation isn't one. I read the Department of Labor's decision differently, your honor. I think the Department of Labor found that Mr. Bork had not satisfied his burden of proven causation. There was no finding that Mr. Bork hadn't suffered an on-the-job injury, and in fact, if you look, for example, at the . . . Well, look, that's the outcome of any litigation, right? The plaintiff loses because he didn't satisfy his burden, but we usually sum up by saying that that's because the assertion wasn't true. Otherwise, your contention boils down to the proposition that anyone who files a claim for an on-the-job injury can never seek another remedy of any kind, no matter how preposterous the claim was, and no matter how easily the agency knocks it down. So, in this case, I just want . . . I didn't ask about this case. I'm trying to figure out whether it's an implication of your argument that anybody who files a claim under the FECA can never file a claim under the Tort Claims Act, no matter how stupid and obviously empty the FECA claim is.  Tell me why, because all that will happen in such a claim is that the Department of Labor will say the claimant has not satisfied his burden of showing a work-related injury, period. So, for . . . That's what it said here. In the Hawkins case . . . I'm not asking about the Hawkins case. I'm trying to figure out what the implication of your argument is. You appear to be running from that implication. You have to tell me why, in my hypothetical, there would be a claim under the Tort Claims Act when the initial FECA claim is obviously stupid, but there is no claim under the Tort Claims Act when the initial claim is sort of plausible, but only partly stupid, because the claim under the FECA is that he was subject to fumes, which caused a spinal fracture. Now, one might say that sounds pretty stupid. You would look to the statute, and you would look to whether the injury is covered under the statute. All right. And if . . . So, for example . . . And 8102A says it deals with on-the-job, on-the-federal-job injuries, and the Department of Labor says Burke didn't suffer from one. The Department of Labor did not dispute that Mr. Burke was exposed to fumes on the job, and that he suffered symptoms as a result of that. All right. Let me give you another hypothetical. Let's forget about Mr. Burke. Somebody works in a federal building and says he suffers from fumes. I think this is wonderful for the Department of Labor because the Department of Labor is now located in a building that, when it began, had to be shut down and rebuilt because there were a lot of pervasive automotive fumes. Right? He says he suffers from fumes, as a result of which he was dizzy. He went outside, and he crossed the street, and he was careless, but a reckless driver hit him, breaking his leg. He went to a hospital, and by virtue of medical negligence, his leg, instead of being set, was amputated. So he's exposed to fumes. There's an auto accident. Then there's an amputation. He files a claim with the Department of Labor and says, I was exposed to fumes, and it caused all of this. The Department of Labor says, yes, indeed, you were exposed to fumes, and that's really too bad, but it didn't make you dizzy. It didn't cause anybody to speed on the highway, and it didn't cause a doctor to commit medical malpractice. You lose. In your view, is a claim permissible, a tort claim? Suppose it's a VA hospital that he goes to that amputates his broken leg. If, as in your hypothetical, the Department of Labor said, the fumes didn't make you dizzy, we disagree with you on that, then he could bring an FTA, but...  They say, the fumes gave you pneumonia, but they didn't make it hard for you to cross the street. So in that case, the Department of Labor is contesting the... It's not contesting anything. It makes a finding of fact. It's making a finding of fact that is contrary to what the plaintiff alleged about his symptoms after the exposure to fumes. I think he probably could bring an FTCA claim. Well, why is that any different from what happened here? If I rephrase what the Department of Labor says in my hypothetical, the Department of Labor says, you say the fumes made you dizzy, causing the accident, leading to the malpractice, but you didn't prove it, so you lose. I think the Department of Labor refers to the, quote, accepted workplace exposure. The Department of Labor did not find that Mr. Burke was not dizzy as a result of the fumes. What it found is that he could not show that his lung nodules, which showed up on a CT scan, were caused one way or by another by the single workplace exposure. So he loses. The Department says, to this extent, you did not suffer an on-the-job injury under 8102A. It's the same thing that the Department of Labor finds in my hypothetical, that you inhaled the fumes, and that was bad, and you suffered some from the fumes, but they didn't cause the auto accident. I don't see how these cases are different. So I'm trying to answer your question because I am trying to answer it, and I believe we're speaking at cross-purposes. The Department of Labor, again, as I read it, accepted that he suffered, for lack of a better word, physical symptoms as a result of the fumes, and that that's what caused him to seek the medical treatment. I think it is difficult to, and then it viewed the subsequent medical malpractice injury as one injury, so, you know, as it should have under the FECA, because the FECA's regulations provide that an injury that occurs in the course of treating a FECA-covered injury is also covered by the statute. So I... Can I try a similar question on you? Of course. Okay. Here's what I'm worried about. I'm worried that you're elevating form over substance, and that your argument is really just all linguistics, and here's what I mean by that. What the government is prone to say in its briefing is, over and over, that this was a covered claim. The Department of Labor accepted jurisdiction. The Department of Labor considered this on the merits, right, and you use these phrases over and over again, okay? Now I'm thinking to myself, okay, what's the legal significance of this repetition of these phrases? Because isn't the upshot at the end of the day, as Judge Easterbrook is indicating, that there's been a conclusion by the Department, by the Secretary, that this is really not a covered claim. This is not a compensable claim under the FECA statute, and it doesn't matter how many times you repeat those phrases in the run-up. That's the conclusion. So I think if it's not within the ambit of FECA, it's not covered. Why? Because there's been a failure of proof here on the connection to the employment. Why doesn't Mr. Bork have an FTCA claim for the malpractice? The Secretary's conclusion is this isn't within the ambit of FECA. I mean, unless I'm reading it wrong. So I think one of the difficulties is that there are so many, there were so many diagnosed conditions that were at issue in the Department of Labor in the FECA proceeding and then at issue in this court case. Again, what the Department of Labor says is they weren't caused, they're not workplace related. The Department of Labor doesn't say that, though. The Department of Labor doesn't say, you weren't exposed to fumes. We find that the fume exposure never happened. We find that, you know. I know that, but he's not. They're not contesting the fumes. But they're contesting causation. And it seems contradictory to say before the Department of Labor to disclaim any causation from these fumes and then say, but there's approximate cause issue that we're asserting that's going to prevent subject matter jurisdiction. Contradictory, I don't know what the difference is. It's disclaiming for purposes of the FECA claim any causation, saying that he has not met his burden of proving causation. But then they're claiming that the fumes were the proximate cause of his medical malpractice injuries for the FTCA claim. That seems contradictory.  Thank you for clarifying. So I think that that is the argument we're making, but I don't. Why isn't that contradictory? That why can you say we're disclaiming causation on the FECA because you haven't proven it? Yet, we're going to assert it as a sword on the FTCA claim by arguing that those fumes were the proximate cause of the medical malpractice at the VA, and therefore you can't bring an FTCA claim. So the first response I have is we are agnostic as to causation under the FECA. So there was not sufficient evidence either way to determine causation. I am not standing here today saying that the fumes did not cause Mr. Burke's prescription of prednisone and this cascade that led to this medical malpractice injury. But it's essentially, he hasn't met his burden of proof, so he cannot proceed given lack of proof of causation. You didn't go in and say, oh, no, he can prove causation. It just seems that there's an inherent conflict in those two positions. So he could have. I certainly have said that he could have but did not. And by could have, I don't mean in the literal sense. I mean, he had the opportunity to prove causation before the Department of Labor. I think the thing that makes this case unique is that this is not, we know that he was exposed to these fumes while he was working. There's no doubt about that. There's also no doubt that that's why he sought treatment. But that doesn't necessarily mean, as the Department of Labor found, that there's causation. That the fumes are the cause of whatever he sought treatment for. Under what you were about to say, then the FECA claim should have gone forward. No, I am not, I don't want to obviously redo. What was the agency's position in the proceedings before the Department of Labor? Did the Veterans Administration say, yes, he was exposed to fumes? And yes, it did cause the later injuries? All I have to go by are the materials that I have submitted to you based on, so it doesn't look to me like the Veterans Administration contested that he was exposed to fumes. But that's separate than causation. That is separate, except that under the statute, and as this court explained in FUCWA, the issue is whether the underlying injury is covered under the statute. And whether there can be, yeah, go ahead. Isn't the consequence of the causation finding here that this is not a FECA covered set of injuries? Isn't that the legal consequence of the finding? The fact that causation has not been established means as a legal matter, you do not have a FECA claim. No, because I think if that is what the consequence was, that's what the Department of Labor would have said. Does the Department of Labor ever say that, that there's no causation? As opposed to burden of proofs. So in the Hawkins case, the Department of Labor said, the predicate acts that you say caused you to seek out this medical treatment that ended up being negligent, they made an affirmative finding that those acts did not happen. It involved workplace bullying and harassment. And the Ninth Circuit focused on that. That's not a problem. There really were fumes. There was a dispute about causation. That your argument seems to be that if two injuries happen close in time, as a matter of law, there can be only one cause, right? And I'm just thinking about the possibility that somebody walks on the street of Chicago, gets hit by a car, and then somebody else comes up and robs him. Seems to me there are two causes. You got hit by a car, the driver may be responsible. And the robber may be separately responsible. Two injuries near the same time. But you wouldn't say that if the plaintiff loses his lawsuit against the driver, he must necessarily lose his lawsuit against the robber. Because it's already been determined that there's only one cause and he's lost his lawsuit against the driver. Isn't that the problem here? You're assuming only one cause of things happening close in time. No. No. We're arguing that the FECA prohibits an appellant such as Mr. Burke from essentially slicing and dicing his injuries after he... For on-the-job injuries, is what it says. And if you, if the Department of... Well, we've been through this before. If the Department of Labor says that he inhaled fumes, but they didn't cause his injuries, then it's not an on-the-job injury. Okay. I think we have your position. All right. Thank you, Your Honor. Unless the court has further questions. No. Thank you, Ms. Hancock. Anything further, Mr. Flaxman? Not unless the court has further questions. Thank you. Okay. Thank you very much. The case is taken under advisement.